UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DWAYNE DANIELS, | ) | |
| | ) | |
| Plaintiff, | ) | 17 C 906 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| THOMAS JANCA and DANIEL TILJAK, | ) | |
| | ) | |
| Defendants. | ) | |

**M<small>EMORANDUM</small> O<small>PINION AND</small> O<small>RDER</small>**

Dwayne Daniels brings this *pro se* suit under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), against Thomas Janca and Daniel Tiljak, alleging that they failed to provide him constitutionally adequate medical care for a wart on his foot while he was a pretrial detainee at the federal Metropolitan Correctional Center ("MCC") in Chicago. Doc. 22. Daniels's original complaint named Janca, Officer Blisett, and the MCC as defendants. Doc. 7. At screening, the court dismissed the MCC as a defendant but allowed Daniels to proceed against Janca and Blisett. Doc. 6. Daniels then amended his complaint, replacing Blisett with Tiljak, Docs. 21-22, and the court denied Defendants' motion to dismiss, Docs. 35, 42, 58. With discovery completed, the parties cross-move for summary judgment. Docs. 81, 90. Defendants' motion is granted, and Daniels's motion is denied.

**Background**

**A.    Daniels's Noncompliance with Local Rule 56.1**

Consistent with Local Rule 56.1, Defendants filed a Local Rule 56.1(a)(3) statement of undisputed facts along with their summary judgment motion. Doc. 83. Most of the relevant factual assertions in the Local Rule 56.1(a)(3) statement cite evidentiary material in the record and are supported by the cited material. *See* N.D. Ill. L.R. 56.1(a) ("The statement referred to in

1

(3) shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph."). Defendants also served on Daniels a Local Rule 56.2 Notice, which explains what Local Rule 56.1 requires of a *pro se* litigant opposing summary judgment. Doc. 84.

Local Rule 56.1(b)(3)(B) required Daniels to file "a concise response to [Defendants' Local Rule 56.1(a)(3)] statement … contain[ing] … a response to each numbered paragraph in [Defendants'] statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R. 56.1(b)(3)(B). Daniels did not file a Local Rule 56.1(b)(3)(B) response to Defendants' Local Rule 56.1(a)(3) statement. Instead, he filed a cross-motion for summary judgment, Doc. 90, a memorandum in support of his motion, Doc. 91, an affidavit in support of his motion, Doc. 92, and "opposing affidavits," Docs. 93-94, in response to the declarations that Janca and Tiljak attached as exhibits to their Local Rule 56.1(a)(3) statement, Doc. 83-1. Defendants construed Daniels's three affidavits as Local Rule 56.1(a)(3) statements in support of his cross-motion and accordingly filed Local Rule 56.1(b)(3)(B) responses, Docs. 112-114. Nearly three months after the December 17, 2018 deadline, Doc. 100, and without seeking an extension or leave to file, Daniels on March 4, 2019 filed a brief in opposition to Defendants' summary judgment motion, Doc. 115.

Daniels's failure to file a Local Rule 56.1(b)(3)(B) response to Defendants' Local Rule 56.1(a)(3) statement has consequences. The local rules provide that "[a]ll material facts set forth in the [Local Rule 56.1(a)(3)] statement … will be deemed to be admitted unless controverted by the statement of the opposing party." N.D. Ill. L.R. 56.1(b)(3)(C). The Seventh Circuit "has

consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015) (collecting cases); *see also Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016) (same); *Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."). Daniels's *pro se* status does not excuse him from complying with Local Rule 56.1. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Zoretic*, 832 F.3d at 641 ("While we liberally construe the pleadings of individuals who proceed pro se, neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes.") (internal quotation marks omitted); *Brown v. Wyndemere LLC*, 608 F. App'x 424, 425 (7th Cir. 2015) ("[A] district court is entitled to enforce its local rules, even against *pro se* litigants.") (citing *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006)).

Here, the problem is not that Daniels failed to *strictly* comply with Local Rule 56.1(b)(3)(B); rather, it is that he did not comply *at all*. Accordingly, the court accepts as true the facts set forth in Defendants' Local Rule 56.1(a)(3) statement "to the extent th[ose] facts [a]re supported by admissible and docketed evidence." *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 411 (7th Cir. 2019) (internal quotation marks omitted) ("According to well-established Seventh Circuit law, [the nonmovant's] noncompliance [with Local Rule 56.1(b)(3)(B)] meant that the district court could exercise its discretion to accept [the movant's] statements of fact as undisputed."); *see also Olivet Baptist Church v. Church Mut. Ins.*

*Co.*, 672 F. App'x 607, 607 (7th Cir. 2017) ("The district court treated most of the [movant's] factual submissions as unopposed, because the [nonmovant] failed to contest them in the form required by Local Rule 56.1(b). We have held that the district court is entitled to enforce that rule in precisely the way it enforced the rule in this litigation.") (collecting cases); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by [Local Rule 56.1(b)(3)(B)], those facts are deemed admitted for purposes of the motion.") (internal quotation marks omitted); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880, 884 (7th Cir. 2012) (similar).

Because Daniels is *pro se*, the court will construe his three affidavits as Local Rule 56.1(a)(3) statements in support of his cross-motion for summary judgment and also as Local Rule 56.1(b)(3)(C) statements of additional facts in opposition to Defendants' summary judgment motion. *See Johnson v. City of Chicago*, 2016 WL 5341810, at *2 (N.D. Ill. Sept. 23, 2016). That said, because the only proper vehicle for disputing factual assertions in a Local Rule 56.1(a)(3) statement is a Local Rule 56.1(b)(3)(B) response, the court will disregard the assertions in Daniels's affidavits to the extent they conflict with the properly supported assertions in Defendants' Local Rule 56.1(a)(3) statement, which are deemed admitted due to his failure to file a Local Rule 56.1(b)(3)(B) response. *See Klein v. Wexford Health Sources, Inc.*, 2019 WL 2435850, at *2 (N.D. Ill. June 11, 2019); *Johnson*, 2016 WL 5341810, at *2 (taking this approach in the context of cross-motions for summary judgment); *Olivet Baptist Church v. Church Mut. Ins. Co.*, 2016 WL 772787, at *1-2 (N.D. Ill. Feb. 29, 2016) (deeming admitted the facts asserted in the defendant's Local Rule 56.1(a)(3) statement where the plaintiff failed to file a Local Rule 56.1(b)(3)(B) response and instead attempted to treat its Local Rule 56.1(b)(3)(C)

statement as a response to the Local Rule 56.1(a)(3) statement), *aff'd*, 672 F. App'x 607 (7th Cir. 2017); *see also Curtis*, 807 F.3d at 219 ("The purpose of Rule 56.1 is to have the litigants present to the district court a clear, concise list of material facts that are central to the summary judgment determination. It is the litigants' duty to *clearly identify material facts in dispute* and provide the admissible evidence that tends to prove or disprove the proffered fact. A litigant who denies a material fact is required to provide the admissible evidence that supports his denial in a *clear, concise, and obvious fashion, for quick reference of the court*. The district court did not abuse its discretion in finding Curtis failed to comply with Rule 56.1 requirements.") (emphasis added); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("Because of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, we have consistently upheld the district court's discretion to require strict compliance with those rules.") (internal quotation marks omitted).

That leaves Daniels's response brief, whose tardiness alone provides sufficient reason to disregard it. *See Raven v. Madison Area Tech. Coll.*, 443 F. App'x 210, 212 (7th Cir. 2011) ("Although we liberally construe pro se filings, we do not enlarge filing deadlines for them.") (citation omitted); *Casimir v. Sunrise Fin., Inc.*, 299 F. App'x 591, 593 (7th Cir. 2008) ("[E]ven when the litigant is pro se, district courts are justified in enforcing deadlines, particularly in the context of summary judgment and Local Rule 56.1.") (collecting cases). Even if it were timely, Daniels's brief would do him little good. It consists largely of bare factual assertions, which are disregarded to the extent those assertions are not separately presented in his Local Rule 56.1 filings. *See Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 442 (7th Cir. 2011) (noting that it "is certainly within a district court's prerogative" to decline to consider "any facts that were not contained in the parties' Rule 56.1 statements"); *Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311,

5

1317 (7th Cir. 1995) (holding that the predecessor to Local Rule 56.1(b)(3) "provides the only acceptable means of … presenting additional facts to the district court"); *Dunhill Asset Servs. III, LLC v. Tinberg*, 2012 WL 3028334, at *3 (N.D. Ill. July 23, 2013) ("Under settled law, facts asserted in a brief but not presented in a Local Rule 56.1 statement are disregarded in resolving a summary judgment motion.") (internal quotation marks omitted); N.D. Ill. L.R. 56.1(b)(3)(C) (requiring "references to the affidavits, parts of the record, and other supporting materials relied upon" to support factual assertions on summary judgment). Daniels's legal arguments are likewise devoid of citations to legal authority, and thus are forfeited. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.")

All that said, the court is mindful that "a nonmovant's failure to respond to a summary judgment motion, or failure to comply with Local Rule 56.1, does not … automatically result in judgment for the movant[s]," who "must still demonstrate that [they are] entitled to judgment as a matter of law." *Keeton*, 667 F.3d at 884 (internal quotation marks omitted).

**B.     Material Facts**

Because summary judgment will be granted to Defendants, the facts are set forth as favorably to Daniels as permitted by the record and Local Rule 56.1. *See Calumet River Fleeting, Inc. v. Int'l Union of Operating Eng'rs, Local 150*, 824 F.3d 645, 647-48 (7th Cir. 2016). On summary judgment, the court must assume the truth of those facts, but does not vouch for them. *See Donley v. Stryker Sales Corp.*, 906 F.3d 635, 636 (7th Cir. 2018).

Daniels at all relevant times was a pretrial detainee at the MCC. Doc. 83 at ¶ 3. Janca, a registered nurse at the MCC, was responsible for delivering prescription medications to

detainees.  *Id*. at ¶¶ 4, 12-13.  Tiljak, a senior correctional officer, was responsible for maintaining a safe and secure environment at the MCC.  *Id*. at ¶ 5.

On January 4, 2017, Daniels saw Lida Carrera, one of the MCC's medical providers, for a "skin problem."  *Id*. at ¶ 6.  Carrera noted that Daniels had a plantar wart on his left foot, but that he had "no current pain" and experienced pain "only when weight bearing."  *Id*. at ¶ 7 (quoting Doc. 83-1 at 35).  Carrera diagnosed Daniels with a viral wart and prescribed a topical ointment, instructing him to apply a small amount to the affected area twice daily for three days, to take four days off, and to repeat either for thirty days or until the wart was resolved.  *Id*. at ¶¶ 8-9.  Daniels said that he understood Carrera's instructions.  *Id*. at ¶ 9.  Carrera designated the prescription "pill line only," of which more in a moment.  *Ibid*. (capitalization altered) (quoting Doc. 83-1 at 36).  Carrera did not prescribe any pain medication, and Daniels did not buy any over-the-counter pain relievers from the commissary in January or February.  *Id*. at ¶¶ 8, 11.

MCC distributes prescription medication via a procedure called the "pill line."  *Id*. at ¶¶ 12-13.  Only a medical doctor or nurse practitioner may write a prescription, and only the chief pharmacist may fill it.  *Ibid*.  When a detainee receives a prescription, the chief pharmacist dispenses the medication into the detainee's pill box, attaches the prescription label, and places the box on a pill cart.  *Id*. at ¶ 13.  Before each pill line, the assigned nurse then picks up the pill cart from Health Services and prints out a report listing each detainee who is scheduled to receive medication and the appropriate dose.  *Id*. at ¶¶ 14, 16.  The nurse also prints out each detainee's "Medication Administration Record," which is a log of when and from which nurse the detainee received each dose and the reasons for any missed doses.  *Id*. at ¶¶ 16-17.  The nurse is not authorized to distribute medications to any detainee whose name does not appear on the

report, even if the medication is in the cart. *Id*. at ¶ 14. Pill line typically takes place three times per day—in the morning, the afternoon, and the evening. *Ibid*.

Daniels's prescription was filled and made available on the evening pill line on January 6, 2017. *Id*. at ¶ 10. Based on the schedule Carrera prescribed—three days on, four days off—Daniels's medication was available on the pill line on January 6, 7, and 8, and unavailable from January 9 through January 12. *Id*. at ¶¶ 24-27. Daniels avers, however, that a nurse named Hurt told him that the medication would be available on the pill line on January 12. Doc. 112 at ¶ 2.

On January 12, Janca was the nurse assigned to the evening pill line, and Tiljak was among the correctional officers working the evening shift in Daniels's unit. Doc. 83 at ¶ 41. When Janca arrived with the pill cart for the pill line, Tiljak stationed himself directly behind Janca. *Id*. at ¶ 43. Daniels waited in the pill line for his medication, but Janca refused to provide it, explaining that he was not scheduled to take the medication that night. *Id*. at ¶¶ 42, 44-46. Daniels tried to describe his pain and the "medicine['s] location" to Janca, but Janca told him to "get, go, beat it." Doc. 112 at ¶ 4.

Daniels then approached Tiljak and asked him for assistance. Doc. 83 at ¶ 47. Tiljak, who had overhead Janca explaining to Daniels that he was not scheduled to take the medication, "shrugged and indicated to Daniels that he could not help him." *Id*. at ¶¶ 46-47. Daniels did not appear to Tiljak to be in "visible medical distress." *Id*. at ¶ 49.

Daniels returned to the pill line and again asked Janca for the medication. *Id*. at ¶ 48. Janca told him to get away from the pill cart. *Ibid*. When Daniels refused, Janca told him to "clear the main floor" and "beat it" because he was preventing Janca from distributing

8

medication to other detainees. *Ibid*. Daniels ultimately left without receiving his medication. *Id*. at ¶ 50.

Later that day, Daniels submitted a grievance complaining that he did not receive his medication. *Id*. at ¶ 52; Doc. 83-1 at 42-43. On February 15, Health Services instructed Daniels to schedule an appointment to discuss extending his treatment. Doc. 83 at ¶ 52; Doc. 83-1 at 42. Nothing in the record indicates that he ever did so. Doc. 83 at ¶ 51. Although Daniels scheduled an appointment for "pain on bottom of foot" on July 13, he did not show up. *Id*. at ¶ 53.

## Discussion

Daniels alleges that Janca and Tiljak violated his constitutional rights by exhibiting deliberate indifference to his medical needs while he was a federal pretrial detainee. Doc. 22 at 6-7. That claim arises under the Fifth Amendment's Due Process Clause. *See Bell v. Wolfish*, 441 U.S. 520, 530, 535 (1979) (holding that the Fifth Amendment's Due Process Clause prohibits subjecting federal pretrial detainees to conditions of confinement that "amount to punishment"); *Cunningham v. Wilson*, 326 F. App'x 948, 949 (7th Cir. 2009) (noting that "a federal pretrial detainee must use the Fifth Amendment's Due Process Clause" to bring a conditions of confinement claim); *see also Wilson v. Seiter*, 501 U.S. 294, 303 (1991) ("[W]e see no significant distinction between claims alleging inadequate medical care and those alleging inadequate 'conditions of confinement.' Indeed, the medical care a prisoner receives is just as much a 'condition' of his confinement as the food he is fed, the clothes he is issued, the temperature he is subjected to in his cell, and the protection he is afforded against other inmates."); *Miranda v. Cnty. of Lake*, 900 F.3d 335, 351 (7th Cir. 2018) (citing *Wilson* for the proposition that "medical care is a condition of confinement").

The court's screening order under 28 U.S.C. § 1915A construed the complaint as stating a claim for deliberate indifference to Daniels's medical needs, Doc. 6 at 2-3, as did its order denying Defendants' motion to dismiss, Doc. 58 at 2. The Seventh Circuit has since held that "medical-care claims brought by [state] pretrial detainees under the Fourteenth Amendment are subject only to the objective unreasonableness inquiry identified" in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), not the Eighth Amendment's deliberate indifference standard. *Miranda*, 900 F.3d at 352. Although Daniels's claim arises under the Fifth Amendment, not the Fourteenth, the same objective unreasonableness standard applies. *See Kingsley*, 135 S. Ct. at 2473-74 (applying *Bell*'s Fifth Amendment standard to a Fourteenth Amendment due process claim); *Miranda*, 900 F.3d at 350 (same).

Under current law, "the controlling inquiry for assessing a due process challenge to a pretrial detainee's medical care proceeds in two steps." *McCann v. Ogle Cnty.*, 909 F.3d 881, 886 (7th Cir. 2018). First, the plaintiff must prove that the "defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of plaintiff's case. A showing of negligence or even gross negligence will not suffice." *Ibid*. (alteration, citation, and internal quotation marks omitted). Second, the plaintiff must prove that the defendant's conduct was objectively unreasonable. *Ibid*.

Defendants are entitled to summary judgment because no reasonable juror could find on this record that they acted objectively unreasonably in refusing to give Daniels prescription medication on a day he was not scheduled to use it. It is undisputed that Carrera's prescription directed Daniels to use the medication for three days, to take four days off, and to repeat; that January 12, 2017 was a day off according to that schedule; and that Janca had no authority to deviate from the prescribed schedule while working the pill line. Doc. 83 at ¶¶ 9-10, 14, 27. It

10

therefore was not objectively unreasonable for Janca to adhere to that schedule by refusing to dispense the ointment to Daniels on an off day. *See McCann*, 909 F.3d at 887 (holding that a nurse did not act objectively unreasonably when she administered the prescribed dose of a medication, even though that dose resulted in a fatal overdose, because it was "not [her] responsibility to second-guess [the prescriber's] medical judgment, especially when nothing about [the] prescriptions or course of care more generally raised any obvious risks of harm for" the plaintiff). Moreover, Daniels adduces no evidence that his request for the medication on the day in question was an emergency or that he was in any visible distress. Thus, it was not unreasonable for Janca to decline Daniels's request for his medication instead of "second-guess[ing]" the pill line report and Daniels's medical records. *See ibid.* It follows that Janca is entitled to summary judgment.

Tiljak is entitled to summary judgment for substantially the same reasons. It is undisputed that Tiljak heard Janca tell Daniels that he was not scheduled to receive his medication on January 12; that Tiljak, like Janca, lacked authority to distribute medication contrary to the prescribed schedule; and that when Daniels sought Tiljak's assistance, Daniels was not in "visible medical distress." Doc. 83 at ¶¶ 12, 14, 46-47, 49. It therefore was not objectively unreasonable for Tiljak to defer to Janca—and, in turn, to Carrera's prescription—as to the appropriate response to Daniels's request. *See McCann*, 909 F.3d at 887-88 (affirming summary judgment for the non-medical defendants on the ground that they were not "responsible for providing medical care to" the plaintiff, they "reasonably relied on [the prescribing physician] to determine the proper course of care," and they "took no steps to contribute to or detract from the treatment [the plaintiff] received"); *see also Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019) ("We have long recognized that the division of labor within a prison

11

necessitates that non-medical officials may reasonably defer to the judgment of medical professionals regarding inmate treatment. If a prisoner is under the care of medical experts[,] a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.") (alteration and internal quotation marks omitted), *petition for cert. filed*, No. 18-1504 (U.S. May 30, 2019); *Miranda*, 900 F.3d at 343 ("When detainees are under the care of medical experts, non-medical jail staff may generally trust the professionals to provide appropriate medical attention.").

## Conclusion

Defendants' summary judgment motion is granted, and Daniels's summary judgment motion accordingly is denied. Judgment will be entered in favor of Defendants and against Daniels.

July 2, 2019

_____
United States District Judge